IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

L.G. PHILIPS LCD CO., LTD.,           Case No. 04-343-JJF (D. Del.)

        Plaintiff,

TATUNG COMPANY; TATUNG
COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION,

        Defendants.
_____/

**OPPOSITION OF DEFENDANTS TATUNG COMPANY AND TATUNG
COMPANY OF AMERICA, INC. TO PLAINTIFF'S MOTION
FOR EXPEDITED RELIEF FROM ORDER**

Defendants Tatung Company and Tatung Company of America, Inc. (collectively, the "Tatung Defendants") submit this Opposition to Plaintiff L.G. Philips LCD Co., Ltd.'s ("LPL") Motion for Expedited Relief From Order Pursuant to Fed. R. Civ. P. 60(b) and Local Rule 7.1(E) [DE-3] ("LPL's Motion") and state as follows:

### I. INTRODUCTION

The Tatung Defendants commenced this proceeding by filing a Motion for Protective Order Limiting Scope of Third Party Deposition and Subpoena that LPL served on Sensormatic, Inc. [DE-1] (the "Tatung Defendants' Motion"). The Tatung Defendants' Motion seeks to limit the scope of the Third Party Subpoena For Deposition Duces Tecum ("Subpoena") served upon Sensormatic, Inc. ("Sensormatic") to documents and testimony concerning accused products in a patent infringement case pending in the United States District Court for the District of Delaware, Case No. 04-343-JJF (the "Main Case"). On March 12, 2007, this Court issued an Order [DE-2] (the "Order") granting the Tatung Defendants' Motion and ruled that discovery of Sensormatic shall be limited

to accused products only.  Similarly, later last week, the Special Master in the Main Case stated his intention to limit discovery only to accused products.

Nevertheless, LPL's Motion requests that this Court: 1) vacate its Order; 2) transfer the Tatung Defendants' original Motion for Protective Order to the Delaware District Court for consideration; or, in the alternative, 3) establish a schedule for further briefing on these issues.  In light of the underlying merits of the Tatung Defendants' Motion and the Special Master's statements, the Tatung Defendants respectfully request that this Court deny LPL's Motion and preserve its Order, thereby allowing third party document production and depositions regarding the accused products to proceed without delay.

## II.     ARGUMENT

### A.     The Tatung Defendants' Motion Warranted Expedited Consideration.

LPL argues that the Tatung Defendants' Motion did not deserve expedited consideration, despite the March 30, 2007 cutoff date for third party discovery.  On the contrary, the grounds for expedited consideration are sufficiently set forth in the Tatung Defendants' Motion.  LPL issued 23 third-party subpoenas for deposition and documents in mid and late February.  The Tatung Defendants immediately apprised LPL that its subpoenas were grossly overbroad, in that they sought highly confidential documents concerning unaccused products. The parties agreed to meet and confer to discuss the Tatung Defendants' objections on March 5, 2007.  When LPL refused to limit the scope of its subpoenas, the Tatung Defendants filed their Motion on March 9, 2007 seeking to limit the scope of Sensormatic's document production (scheduled for the same day) and its testimony in a deposition scheduled for March 16, 2007.  Realizing the need for

126749974_1
BOC 36454391v2 3/21/2007999907829890

expedited consideration, this Court granted the Tatung Defendants' Motion in its Order dated March 12, 2007. The Court has discretion to grant expedited relief and chose to exercise its discretion in this instance. <u>See</u> S. D. Fla. Local Rule 7.1(E).

LPL's remaining arguments concerning the Court's expedited consideration of the Tatung Defendants' Motion are inadequate to warrant vacatur of the Order. LPL concedes that where good cause exists to expedite hearing, it may not be entitled to present its opposition to the Court. <u>See</u> LPL's Motion at p. 2. The very fact that the Court issued the Order on an expedited basis indicates that the Court found the requisite good cause.

In addition, LPL insists that the Tatung Defendants' service method "violated prior practice in the principal litigation," but it advances no case law in support of its claim that it is entitled to such notice. Indeed, the Tatung Defendants, in accordance with all applicable rules, properly and promptly served all attorneys on the service list via U.S. Mail. Similarly, LPL's assertion that the Tatung Defendants should have served its Motion for Protective Order specifically on the individual attorney who signed the subpoena is meritless. That individual was not on the service list, and the Tatung Defendants properly served numerous LPL attorneys <u>at the same law firm</u> who were on the service list.

Finally, LPL argues that "Tatung's actions denied Plaintiff <u>any</u> opportunity to respond and be heard." LPL has misplaced its blame. The Tatung Defendants requested an expedited briefing schedule and hearing. The Tatung Defendants had no way of knowing when this Court would hear or rule on their Motion. There is no basis to

3

suggest that the Tatung Defendants somehow manipulated the Court's schedule to the disadvantage of LPL.

**B.  The Court Should Not Vacate Its Order Because The Special Master In The Main Case Stated That He Will Limit Discovery To The Accused Products.**

On March 16, 2007, after this Court granted the Tatung Defendants' Motion and after LPL submitted the LPL Motion, the parties participated in a telephonic hearing with the Special Master in the Main Case concerning the scope of discovery. The Special Master indicated that he will rule in the Tatung Defendants' favor and will limit discovery to the accused products as identified by LPL. He further stated that he will issue written recommendations shortly.

> SPECIAL MASTER POPPITI:  . . .You can expect, and I said it to you last week, but, quite frankly, I wasn't able to turn to it and get to it this week, you will get a finding and recommendation. It's important that it be as careful -- they all should be careful -- but in more depth in terms of its analysis of dealing with the issue accused/unaccused. But by virtue of what has been going on, **I am telling you that the discovery is going to be, absent something earth shattering that I consider in the next number of days, it's going to be limited to accused products.**
>
> Now, perhaps I should have done that earlier, and I will even go so far as to suggest, by perhaps doing it earlier in terms of giving you an indication or an inclination on the record, you would have been able to, perhaps, discuss the issue in a meet and confer more meaningfully, and you would have had the opportunity and **you now may have that opportunity to share a Special Master's inclination with other jurisdictions that you will be working in.**

See Exh. A, Rough Transcript of Hearing at 19-20.[1] (**emphasis added**).

The Special Master further noted that LPL had provided no authority for the proposition that he could order the Tatung Defendants to withdraw their motions for protective order. (Id. at 11-12.) Having stated his intention to limit discovery to the

---

[1] All Exhibits are attached to the Declaration of Charlene L. Oh ("Oh Decl.").

4

accused products, the Special Master requested that the parties meet and confer regarding scheduling of third party depositions and report on the status of those discussions on March 21, 2007. (Id. at 26-31.) The Special Master also indicated that he may be willing to extend the third party discovery cutoff so that the parties can complete outstanding third party discovery. (Id. at 26-27.)

Because the Special Master has stated that all discovery will be limited to accused products only, the Court's Order, which imposes similar limits, should stand. See Order dated March 12, 2007 annexed hereto as Exh. B.

### C. The Court Could Alternatively Transfer The Underlying Motion for Protective Order To The District Of Delaware.

The Tatung Defendants have no objection to the transfer of their underlying Motion to the Delaware District Court. In fact, in order to save time and expense, the Tatung Defendants originally had asked LPL to agree to consolidate the motions before the Special Master in the Main Case, but LPL refused, contending that the Special Master's rulings would not be binding on third parties. (Exh. A at 8, 17.) In light of LPL's refusal to have the motions heard by the Delaware Court and the fact that the Tatung Defendants had no other available remedy against LPL's improper subpoenas, it smacks of hypocrisy for LPL to now complain that the Tatung Defendants filed their motions in 15 different districts.[2]

Although the Tatung Defendants do not object to transferring the motion to the District of Delaware, in light of the Special Master's statements at the March 16 hearing, the Tatung Defendants believe it would be more efficient for this Court to simply deny

---

[2] As a further example of LPL's hypocrisy, its Motion states: "Plaintiff respectfully submits, however, that Tatung's position offers further support for LPL's position that the proper forum for litigating such a matter is Delaware, not Florida." The Court need only look to the March 16, 2007 Transcript to reveal LPL's blatant deception of the record. See Exh. A at 8, 17.

5

LPL's Motion and preserve its Order limiting discovery from Sensormatic to accused products only. That is how the Special Master will rule if the Tatung Defendants' Motion were transferred to his Court and that is presumably why he wanted to give the parties the "opportunity to share a Special Master's inclination with other jurisdictions that you will be working in."[3] The Order serves to allow the parties to immediately proceed with third party depositions regarding the products at issue, and end further proceedings in this ancillary matter.

**D.  LPL Has Not Established That It is Entitled To Further Briefing On The Underlying Motion For Protective Order.**

Notably, nowhere in LPL's motion does LPL address the one salient issue raised by the Tatung Defendants' underlying Motion - why confidential customer information relating to hundreds of unaccused products is remotely relevant to this case. Having failed to put forth a cogent argument for why it is entitled to discovery regarding products it has not accused of infringing the Patents-in-Suit, LPL attempts to cloud the issues. Under well-established case law, a patentee like LPL has no right to embark on a fishing expedition by issuing subpoenas to an accused infringer's customers for confidential information concerning non-infringing products.

**1.  LPL Should Not Be Allowed To Embark On A Fishing Expedition.**

The parties have been proceeding with discovery regarding the accused products. The Special Master has already stated his intention to bar discovery regarding unaccused products. While LPL represents that the Subpoena only seeks information "related to

---

[3] Notably, other courts have granted the Tatung Defendants' underlying Motions for Protective Order. On March 15, 2007, the District of Minnesota stayed any discovery from Best Buy, Inc. regarding unaccused products pending a ruling from the Special Master. See D. Minn. Order annexed hereto as Exhibit C. On March 15, 2007, the District of New Jersey issued a similar ruling with respect to LPL's subpoena to Tyco International. See Oh Decl. at ¶5.

6

purchase and sale of the *infringing* products in the United States," its Subpoena in fact seeks confidential technical information, negotiations, correspondence, agreements and pricing information regarding *every* "visual display product" sold or offered for sale by the Tatung Defendants. The Subpoena is not in any way limited to the 20 accused products identified by LPL. As such, the Subpoena improperly seeks to delve into the confidential business relationship between the Tatung Defendants and Sensormatic, which has absolutely nothing to do with this case. LPL should not be permitted to embark on a fishing expedition that is a mere pretext to obtain confidential information for competitive purposes. E.g., Marshall v. Westinghouse Elec. Corp., 576 F. 2d 588, 592 (5th Cir. 1978) (a plaintiff is not permitted to "'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive")[4]; In re Nofziger, No. 6:04-BK-09253-KSJ, 2006 WL 1889991, *2 (Bkrtcy.M.D.Fla. June 30, 2006) (denying relief from a protective order prohibiting discovery inquiries pertaining to the debtor prior to September, 1999, explaining that the "[e]vidence rules clearly allow a court to balance a party's request for an ambiguous fishing expedition against the need to protect a legitimate security concern of an opposing litigant") (citing to Fed. R. Civ. P. 26(c) and Fed. R. Evid. 611(a)); see also Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1327-28 (Fed. Cir. 1990); Joy Technologies, Inc. v. Flakt, Inc., 772 F. Supp. 842, 849 (D. Del. 1991).

---

[4] "[T]he decisions of the United States Court of Appeals for the Fifth Circuit (the "former Fifth" or the "old Fifth"), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, [are] binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit." Bonner v. City of Prichard, Ala., 661 F. 2d 1206, 1209 (11th Cir. 1981).

### 2. LPL's Inducement Argument Is Meritless.

In a footnote, LPL half-heartedly proffers that the broad categories of information it seeks are relevant to the issue of inducement. However, there can be no indirect infringement (or inducement) without direct infringement. "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, . . . and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." Minnesota Mining and Manufacturing Co. v. Chemque, Inc., 303 F.3d 1294, 1304 (Fed. Cir. 2002); Medtronix Xomed, Inc. v. Gyrun ENT LLC, 440 F. Supp.2d 1300, 1313 (M.D. Fla. 2006) (same) In other words, in order for there to be indirect infringement, there must be direct infringement and an infringing product. The cases cited in LPL's Motion do not hold to the contrary. Here, there is no allegation of direct infringement with respect to the hundreds of products for which LPL seeks information from the Tatung Defendants' customers.

### 3. The Tatung Defendants Have Standing To Seek A Protective Order Under Federal Rule Of Civil Procedure 26(c).

While acknowledging that the Tatung Defendants' Motion is filed pursuant to Fed. R. Civ. P. 26(c), LPL nevertheless resorts to citing inapposite case law under Fed. R. Civ. P. 45 for the proposition that the Tatung Defendants do not have standing to file this motion.[5] The Tatung Defendants have repeatedly informed LPL, including during the March 5, 2007 meet and confer, that their motions are made pursuant Rule 26(c).

---

[5] All of the cases cited in LPL's Motion are inapposite. *Dart Industries, Inc. v. Liquid Nitrogen Processing,* 50 F.R.D. 286, 291 (D.Del. 1970); *Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir. 1985), *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004), *Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York*, 519 F. Supp. 668, 680 (D.Del. 1981) all address a party's standing to bring a motion to quash under FRCP 45. LPL has not provided any authority to support its assertion that the Tatung Defendants lack standing to move for a protective order under Fed. R. Civ. P. 26(c).

8

However, LPL has continued to mischaracterize the Tatung Defendants' position in order to manufacture a non-existing standing issue. As briefed fully in the Tatung Defendants' Motion, a party whose confidential information is being sought by way of subpoenas issued to third parties unequivocally has standing to file motions for protective order under Rule 26(c).

**E.    LPL's Motion Is Premised On Baseless Accusations.**

### 1.    The Tatung Defendants Have Not Improperly Impeded Third Party Discovery.

The Tatung Defendants' Motion sought very limited relief: it did not seek to bar all third party discovery; rather, it only asked that third party discovery be limited to the products that have been expressly accused by LPL of infringing the Patents-in-Suit. This approach is entirely consistent with the Special Master's views regarding discovery. Had LPL agreed to narrow the scope of its subpoenas during the meet and confer process, motion practice and the delay associated with it could have been avoided entirely.

Moreover, Rule 26(c) clearly affords a party the right to file a motion for protective order concerning third party discovery. That the Tatung Defendants availed themselves of this procedural right does not in any way serve as evidence of improper conduct. Indeed, the Special Master suggested at the March 16 hearing that it was not improper for the Tatung Defendants to inform their customers of the pending motions for protective order. See Exh. A at p. 12. In most instances, the customers themselves have served formal objections to LPL's subpoenas or filed motions to quash in their respective districts. The Tatung Defendants are informed that Sensormatic may file a motion to quash in this proceeding.

9

### 2. Any Delay Asserted By LPL Is Self-Inflicted.

Earlier this year, LPL sought to extend the third party discovery cutoff on multiple occasions. On each of those occasions, the Special Master denied LPL's request to prolong discovery. LPL nevertheless waited until mid to late February 2007 to issue a series of 23 subpoenas out of 15 different districts to the Tatung Defendants' customers. It could have issued these subpoenas in January or early February 2007, but it did not do so, presumably because it was hoping to obtain an extension of the discovery deadline. In short, any supposed delay associated with third party discovery was caused solely by LPL, and not the Tatung Defendants.

### 3. Any Inconvenience Asserted By LPL Is Self-Inflicted.

LPL's suggestion that the Tatung Defendants timed the motions and expedited hearings to coincide with depositions of Tatung's witnesses is completely unfounded. First, LPL chose to wait until the eve of the discovery cutoff to notice 23 third party depositions across the country. In fact, it noticed multiple third party depositions for the same day in different states. Second, LPL fails to mention that counsel for the Tatung Defendants attend the same depositions attended by LPL's counsel. Therefore, the Tatung Defendants are no less inconvenienced than LPL. Third, the parties already had scheduled numerous depositions for the month of March. The Tatung Defendants' motions for protective orders were prepared and first filed while the Tatung Defendants were deposing LPL's witnesses and preparing their own witnesses for depositions. LPL itself filed a number of motions with the Special Master at the same time that the Tatung Defendants were in the midst of those depositions. Fourth, the Tatung Defendants have no control over when the various District Courts schedule expedited hearings on motions.

10

The Tatung Defendants certainly lack sufficient control over the schedules of District Courts so as to orchestrate overlapping hearings.

#### 4. The Tatung Defendants Have Complied With Their Discovery Obligations.

LPL's complaints regarding the Tatung Defendants' document productions are both baseless and irrelevant for purposes of this motion. The Tatung Defendants have fully complied with their discovery obligations. See March 2, 2007 Letter to Special Master Regarding Document Production annexed hereto as Exh. D.

### III. CONCLUSION

For the reasons stated above, the Tatung Defendants respectfully request that the Court deny LPL's Motion, or in the alternative, transfer the motion to the District of Delaware where this case is currently pending.

Dated: March 21, 2007
Boca Raton, Florida

                              GREENBERG TRAURIG, P.A.
                              5100 Town Center Circle, Suite 400
                              Boca Raton, FL 33486
                              Telephone: 561.955.7600
                              Facsimile: 561.338.7099

                              By: s/Geoffrey M. Cahen
                                  Geoffrey M. Cahen
                                  Florida Bar No. 0013319
                                  Counsel for Defendants Tatung
                                  Company and Tatung Company of
                                  America, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2007, I served a copy of the foregoing upon the following:

**Via CM/ECF:**

Martin B. Woods, Esq.
mwoods@swmwas.com
Marissa B. Kelly, Esq.
mkelly@swmwas.com
**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
200 East Las Olas Blvd., Suite 2100
Ft. Lauderdale, Florida 33301

**Via U.S. Mail:**

Sensormatic, Inc.
6600 Congress Ave.
Boca Raton, Florida 33431-0837

**Via email:**

Richard D. Kirk
rkirk@bayardfirm.com
**The Bayard Firm**
222 Delaware Avenue # 900
Wilmington, DE 19899

Gaspare J. Bono
gbono@mckennalong.com
Rel S. Ambrozy
rambrozy@mckennalong.com
Cass W. Christenson
cchristenson@mckennalong.com
Lora A. Brzezynski
lbrzezynski@mckennalong.com
**McKenna Long & Aldridge LLP**
1900 K Street, N.W.
Washington, DC 20006

126749974_1
BOC 36454391v2 3/21/2007999907829890

Jeffrey B. Bove
jbove@cblh.com
James D. Heisman
jheisman@cblh.com
Jaclyn M. Mason
jmason@cblh.com
**Connolly Bove Lodge & Hutz LLP**
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899


Tracy R. Roman
troman@raskinpeter.com
**Raskin Peter Rubin & Simon LLP**
1801 Century Park East, Suite 2300
Los Angeles, CA 90067


Scott R. Miller
smiller@cblh.com
**Connolly Bove Lodge & Hutz LLP**
355 South Grand Avenue, Suite 3150
Los Angeles, CA 90071


Frederick L. Cottrell, III
Cottrell@RLF.com
Anne Shea Gaza
Gaza@RLF.com
**Richards Layton & Finger, PA**
One Rodney Square
P.O. Box 551
Wilmington, DE 19899


                                              By:  s/Geoffrey M. Cahen
                                                  Geoffrey M. Cahen

126749974_1
BOC 36454391v2 3/21/2007999907829890